## IN THE IOWA DISTRICT COURT FOR WEBSTER COUNTY

| | |
|---|---|
| WHITE TRANSFER AND STORAGE CO., | LAW NO. LACV321160 |
| Plaintiff, | |
| v. | **AMENDED PETITION AT LAW AND DEMAND FOR JURY TRIAL** |
| QBE AMERICAS, INC. aka and/or dba REGENT INSURANCE COMPANY, | |
| Defendants. | |

COMES NOW the Plaintiff, White Transfer and Storage Co., and in support of its Petition against the Defendant QBE Americas, Inc. aka and/or dba Regent Insurance Company, states as follows:

### PARTIES AND JURISDICTION

1.      Plaintiff White Transfer and Storage Co. ("White Transfer") is an Iowa corporation authorized to do business in the State of Iowa with its principal place of business located in Fort Dodge, Webster County, Iowa.

2.      Defendant QBE Americas, Inc. also known as and/or doing business as Regent Insurance Company ("Regent") is a Delaware Corporation authorized to do and conducting business in the State of Iowa.

3.      Regent provides property and casualty insurance and services to the general public.

4.      The events that give rise to this action occurred and the contract at issue was executed in Fort Dodge, Webster County, Iowa, and venue is appropriate in the Iowa District Court for Webster County.

1

## FACTS

5.      Regent issued a comprehensive insurance policy to White Transfer, Policy number CCI1142954, with effective dates of coverage from July 1, 2016 - July 1, 2017, hereinafter referred to as "Policy".

6.      That the Policy insured, in part two buildings owned by White Transfer and located in Fort Dodge, Iowa, known as 'Big Blue' and 'Wheatbelt'.

7.      On or about May 16, 2017 and May 17, 2017 a windstorm occurred at the location of White Transfer and Storage in Fort Dodge, Iowa.

8.      The May 17, 2017 straight-line wind storm caused extensive damage throughout Fort Dodge, Iowa and necessitated a disaster area declaration for Webster County.

9.      That wind damage on the buildings is a peril insured against under the terms of the Policy described herein.

10.     As a result of the windstorm, in October 2017, White Transfer experienced leaks from heavy rains.

11.     Upon experiencing the leaks, on October 17, 2017, White Transfer emailed its insurance agent requesting an adjuster to come inspect the roofs for damage.

12.     3 minutes later the insurance agent responded by asking if White Transfer believed this damage was caused by the severe wind storm in May 2017.

13.     On October 18, 2017, White Transfer's insurance agent submitted White Transfer's wind damage claim to Regent with the date of loss submitted as May 17, 2017 and the claim for wind damage to the roof of the main warehouse at FD location ("Claim").

14.     Notwithstanding the fact that the October 18, 2017 Claim was made for wind damage from the May 2017 wind storm, for some reason, Regent retained Mr. Thomas Walstrom

2

on November 14, 2017, who in his report states that he was retained "to address whether any of the buildings at the property had sustained <u>hail damage</u>."

15.     In fact, Mr. Walstrom states in his report that he did not actually investigate the property for wind damage <u>until "early November 2018"</u>.

16.     Notwithstanding that a Claim had been made 13 months earlier and White Transfer had two buildings with roofs that need replaced, Regent failed to even inspect the roof for wind damage for <u>more than a year after</u> the Claim was reported.

17.     By August 1, 2018, Regent had yet to even inspect the roof for wind damage, let alone approve or deny White Transfer's Claim that was reported 10 months earlier.

18.     Therefore, on August 1, 2018, White Transfer demanded an appraisal under the Policy's appraisal clause, which provides:

### No. 2 APPRAISAL

If we and you disagree on the value of the property or the amount of loss, either may make written demand for an appraisal of the loss.  In this event each party will select a competent and impartial appraiser.  The two appraisers will select an umpire.  If they cannot agree, either may request that selection be made by a Judge of a Court having jurisdiction.  The appraisers will state separately the value of the property and the value of the loss.  If they fail to agree they will submit their differences to the umpire.  A decision agreed upon by any two will be binding.  Each party will:

a.     Pay its chosen appraiser, and;

b.     Bare the other expenses of the appraisal and umpire equally.  If there is an appraisal, we will still retain a right to deny the claim.

19.     That Regent selected as their appraiser, Chad Davis, of Urbandale, Iowa.

20.     That White Transfer selected Tom Irmiter of St. Paul, Minnesota, as its appraiser.

21.     That Mr. Davis and Mr. Irmiter could not agree upon an umpire so October 18, 2018, White Transfer filed a Petition for the appointment of an umpire in Iowa District Court of Webster County pursuant to said Policy provision.

3

22.     In its Petition to the District Court, White Transfer stated, in part, that "On or about 5/17/2017, a hail and wind storm struck the Premises and the surrounding area, causing substantial damage to the exterior structure of the Premises" to which Regent denied this statement "for lack of information".

23.     At the time, it seemed odd to White Transfer that Regent did not have enough information to admit this statement in its Answer, but it turns out, that despite the Claim being submitted a year earlier, Regent had not even investigated the property for wind damage at the time of White Transfer's October 18, 2018 filing.

24.     In its submission for the District Court's consideration, Regent proposed James Tomitech as an "independent and unbiased umpire" for the appraisal hearing.

25.      The Webster County District Court ultimately entered an Order appointing Michael Streit of Des Moines, Iowa as the umpire.

26.     In early November 2018, Regent finally had its engineer, Mr. Walstrom, investigate White Transfer's property for wind damage for the first time.

27.     On November 12, 2018, Regent sent a reservation of rights letter to White Transfer that specially said "The damage reported and statements made by the insureds that have raised concerns over timely reporting of the loss and possible damage that predated the Regent Insurance policy term(s)."

28.     Mr. Walstrom then, in a matter of four months, issues two different reports from his early November 2018 investigation of the property.

29.     In Mr. Walstrom's first report dated January 2, 2019, without any qualification or limitation about the timing of the claim reporting or his ability to investigate or render opinions, Mr. Walstrom opines that "Wind was not a factor in any segment of this loss."

4

30.     In that January 2, 2019 report, Mr. Walstrom opines that White Transfer's damages were caused by improper "design of installation of the existing roof assembly".

31.     Without yet issuing a denial letter to White Transfer or providing a copy of Mr. Walstrom's report to White Transfer, for some reason, Mr. Walstrom issues a new report dated May 30, 2019.

32.     Interestingly, Mr. Walstrom issues a new report without any additional site visits or inspections since his previous report.

33.     In this new report, dated May 30, 2019, Mr. Walstrom opines, unlike the first report, that the damage to the roofs was caused by "wear and tear, corrosion, and faulty workmanship in the design and construction of the roofing systems".

34.     Coincidentally, these newly identified causes of the damages in the May 30, 2019 report, happen to be the verbatim excluded perils under Regent's Policy with White Transfer.

35.     These newly identified causes of the damage then become the basis for Regent's June 19, 2019 denial letter to White Transfer and are the same excluded perils which are argued by Regent at the appraisal hearing as a claimed basis to preclude coverage for White Transfer's Claim.

36.     Regent's June 19, 2019 denial letter to White Transfer did not include timing of the reporting of the Claim as a basis for the denial; thus, the initial "concerns" over the timing of the reporting that were described in the November 12, 2018 reservation of rights letter, are now not mentioned in this June 19, 2019 denial letter.

37.     Thereafter, on July 18, 2019 Regent's second engineer, James Tometich, issues his expert report.

38.     Regent's new expert is the same James Tomitech that Regent proposed to the Webster County District Court as a proposed "unbiased" and "independent" umpire for the appraisal hearing.

39.     In his July 18, 2019 report and ultimately at the appraisal hearing, Mr. Tometich, who investigated the property 20 months after White Transfer reported the wind damage claim, opined that there was no wind damage to the roofs and did not qualify or limit his findings and conclusions about the timing of the Claim reporting or state that it in any way affected his ability to investigate the Claim or render opinions.

40.     Throughout this entire timeline, White Transfer retained one expert, Brian Johnson, who issued one report, dated June 17, 2019, which opined that the buildings sustained wind damage.

41.     That on September 13, 2019 the appraisers and the umpire held an appraisal hearing at White Transfer's office in Fort Dodge, Iowa.

42.     At the appraisal hearing, the appraisal panel received these reports, heard the testimony for these opinions, and considered and rejected each of the possible causes of the loss opined by Regent's experts, Mr. Walstrom and Mr. Tometich, and found that wind was the cause of the damage to the roofs of Big Blue and Wheatbelt.

43.     At the appraisal hearing, neither of Regent's experts ever claimed that the timing of White Transfer's reporting of the Claim affected or limited their opinions or their abilities to review the roof and come up with their determination that there was no wind damage.

44.     Regent was represented at the appraisal hearing by its appraiser, Chad Davis, who was present throughout the entirety of the hearing.

6

45.     Prior to the final submission of the matter, Chad Davis, Regent's appraiser and representative, submitted his position statement to umpire Streit making clear that this appraisal process would determine both the monetary amount of the loss and the cause of loss and that those determinations were legally binding on the parties:

"The purpose of this appraisal is to determine if wind damaged the metal roofs of the insured's buildings, Big and Wheatbelt. If wind did in fact damage these roofs, we need to determine what the wind damages are and how they should be repaired, as well as, the total Replacement Cost Value and Actual Cash Value of these damages. I am attaching Walnut Creek Townhome Association v. Depositors Insurance Company for your review, as it shows the importance of this appraisal panel **determining the <u>factual cause</u> and <u>monetary amount</u> of the insured's loss**, <u>**as our findings are legally binding**</u>. **We, the panel, do set the causation of this loss and we need to determine if wind did in fact damage these buildings**." (emphasis added).

46.     On October 14, 2019 Regent received notice that Mr. Irmiter and Mr. Streit agreed to an appraisal award as described below ("Appraisal Award"):

| Description | Replacement Cash Value | Actual Cash Value |
|---|---|---|
| Item 1: Structure Big Blue | $ 1,182,919.71 | $ 413,992.18 |
| Item 2: Structure 2 | $ 108,253.63 | $ 37,888.77 |
| Content Manipulation | $ 100.00 | $ 100,000.00 |
| TOTAL | $ 1,391,088.42 | $ 551,880.95 |

47.     The Appraisal Award also awarded the sum of $745,084.92 which should be paid at the time of the enforcement of building codes requiring replacement of insulation.

48.     That the loss payment provision of the Policy provides in pertinent part:

7

G.      We will pay for covered loss or damage within 30 days after we receive the sworn proof of loss, if you have complied with all the terms of this coverage part, and:

      1.      We have reached an agreement with you on the amount of loss; or

      2.      An appraisal award has been made.

49.     Despite receipt of the loss and previously representing to the appraisal umpire that the finding would be "legally binding", in breach and direct violation of the terms of the Policy, Regent has failed and refused to pay any portion of the Appraisal Award to White Transfer.

50.     In addition to having knowledge of the appraisal hearing through its appraiser Chad Davis, on December 17, 2019 Regent was provided a sworn statement from Mr. Irmiter and on January 10, 2020, Regent was provided a sworn statement from Mr. Streit indicating that the Appraisal Award was for wind damage only and that during the appraisal process they considered and eliminated the following causes:

a.  Wear and tear

b.  Settling, cracking, shrinking or expansion

c.  Faulty, inadequate or defective design workmanship specifications, repairs or construction.

51.     In addition, Regent has been advised by Mr. Irmiter and Mr. Streit, as evidenced by the Appraisal Award executed by both, that damage to the Wheatbelt building caused by the wind was in the amount of $108,253.63, for replacement cash value and $37,888.77 actual cash value.

52.     Regent recklessly continues to deny payment of the Appraisal Award on the continued position that wind was not the cause of White Transfer's damages despite

undisputedly having knowledge that the Appraisal Award was for wind only and that the appraisal process considered and eliminated each of the causes of loss claimed by Regent.

53.     On November 7, 2019, Regent filed a declaratory judgment action in the Northern District of Iowa Central Division contending that the Policy does not provide coverage for White Transfer's damages:

(i)     The Policy does not provide coverage for wear and tear; settling, cracking, shrinking or expansion, and faulty, inadequate or defective design specifications and workmanship repair, construction, renovation, remodeling, grading, compaction.

(ii)    The Policy does not provide coverage to the extent 'Wheatbelt' sustained wind damage that the cost to repair did not exceed the policy's $25,000 deductible.

(iii)   The increased cost of construction coverage may not apply to the damages in the appraisal award for insulation for Big Blue or, if it does, it limits the amount of coverage to $300,000.

(iv)    The Policy does not provide coverage for any hail damage to the metal roofs of 'Big Blue' and 'Wheatbelt' due to the cosmetic damage exclusion.

(v)     White Transfer failed to comply with all conditions precedent to coverage by timely reporting the Insurance Claim, thereby prejudicing Regent Ins. Co.'s investigation.

54.     None of the reasons stated in this declaratory judgment action provide a reasonable basis for Regent to deny payment.

55.     The reasons stated above in (i) and (ii) were all heard, considered, and rejected at the appraisal hearing and therefore there is no reasonable basis to withhold payment due to the reasons in sections (i) and (ii).

56.     The increased cost of construction provision listed above in section (iii) concerns the Appraisal Award's finding of the additional sum of $745,084.92 that was to be paid at the time of enforcement of building codes requiring insulation.

57.     White Transfer admitted and agrees with Regent on section (iii) that the additional cost of construction provision limits that award amount from $745,084.92 to $300,000 and therefore there is no reasonable basis for Regent to withhold payment due to the reason in section (iii).

58.     In the above section (iv), Regent asserts that the Policy does not provide coverage for any hail damage to the metal roofs, to which no part of the Appraisal Award provided any coverage for hail damage nor was hail damage ever argued at the appraisal hearing by either White Transfer or Regent and therefore this is no reasonable basis for Regent to withhold payment due to the reason in section (iv).

59.     Finally, in section (v) above, after an unfavorable Appraisal Award, Regent for the first time asserts that White Transfer failed to timely report its claim and thereby prejudiced Regent's investigation, despite no evidence or reasonable basis to make this claim.

60.     When Regent initially denied White Transfer's Claim they did not list as a reason any failure on White Transfer to timely report the Claim, nor did they indicate that they were prejudiced by an untimely reporting.

61.     In fact, at the appraisal hearing, Regent submitted evidence from two separate experts who investigated White Transfer's Claim and issued conclusive determinations on their opinions as to the cause of the loss without any qualification that a delay in reporting affected their investigation, their ability to review the Claim, or their ability to render opinions.

10

62.     There is simply no reasonable basis to withhold payment due to the reason in section (v) because there is no evidence of delay nor any evidence of any prejudice from the timing of White Transfer's notice of its Claim.

63.     Regent's declaratory judgment action was nothing but an attempt to set aside the Appraisal Award based on the very same causes of loss contentions that Regent unsuccessfully argued at the appraisal hearing despite the terms of their own Policy and clear Iowa law, which Regent's representative Chad Davis referenced to the umpire prior to the Appraisal Award, providing that the appraisal hearing's determination of the cause and amount of the loss is "legally binding" on the parties.

64.     Throughout this entire, years long, process, White Transfer continues to possess two buildings, Big Blue and Wheatbelt, which have leaking roofs in need of replacement.

## FIRST CAUSE OF ACTION – BAD FAITH

65.     Plaintiff restates and incorporates by this reference the allegations set out in paragraphs 1 through 64 as if fully set out herein.

66.     Regent acted in bad faith and in wanton disregard of White Transfer's rights in the manner in which it investigated and handled the Claim as set out herein.

67.     Regent's actions and inactions demonstrate an indifference to or disregard of the interests of White Transfer.

68.     Regent failed to conduct a fair, prompt, and thorough investigation of White Transfer's Claim.

69.     In material breach of their own Policy and in direct contraction of clear Iowa precedent and their own representative's position that the Appraisal Award's determination of the monetary amount and cause of loss would be "legally binding", Regent filed the declaratory

11

judgment action and continues to refuse to pay White Transfer any portion of the Appraisal Award.

70.     Regent is knowingly and intentionally withholding payment of the Appraisal Award from White Transfer.

71.     Regent has no reasonable basis for denying the payment of the Claim under the Policy after the Appraisal Award.

72.     Regent knows or recklessly disregarded the lack of a reasonable basis for continuing to deny payment.

73.     As a result, White Transfer has incurred and continues to incur damages, including, without limitation, attorney fees.

74.     Regent's actions constitute bad faith, a willful and wanton disregard of White Transfer's rights and entitles White Transfer to an award of punitive damages.

**SECOND CAUSE OF ACTION – BREACH OF CONTRACT**

75.     Plaintiff restates and incorporates by this reference the allegations set out in paragraphs 1 through 74 as if fully set out herein.

76.     White Transfer has demanded payment for the entire loss as a result of the May 2017 wind storm.

77.     A wind storm such as the one in May 2017 is a covered peril under the Policy.

78.     The wind storm of May 2017 was conclusively determined to be the cause of White Transfer's damages pursuant to the appraisal process set forth in the Policy.

79.     The damages are in the amount of $1,691,088.42.

80.     Regent's failure and refusal to pay the damages required under the Policy is a material breach of the contract.

81.     As a direct and proximate result of the breach, White Transfer is damaged in the amount of at least $1,691,088.42, plus interest.

**WHEREFORE** the Plaintiff, White Transfer prays for judgment in its favor and against the Defendant, Regent in an amount that will fully and completely compensate White Transfer for all of its damages sustained as a result of the Regent's bad faith and breach of contract in the amount of at least $1,691,088.42, together with costs and interest as allowed by law, punitive damages, reasonable attorney fees as well as all other relief as the Court deems just and equitable in the premises.

## JURY DEMAND

COMES NOW the Plaintiff and hereby demands a trial by jury in all aspects of this Petition.

**WHITE TRANSFER AND STORAGE CO.,** Plaintiff,

By:   /s/ *Mark R. Crimmins*
     Mark R. Crimmins, AT0001874
     CRIMMINS & KEHM LAW FIRM
     706 First Avenue North
     Fort Dodge, Iowa 50501
     Telephone:  515-573-2191
     Facsimile:   515-573-2192
     crimminslaw@frontier.com
     *Attorneys for Plaintiff*

By:   /s/ *Ryan A. Kehm*
     Ryan A. Kehm, AT0011459
     CRIMMINS & KEHM LAW FIRM
     706 First Avenue North
     Fort Dodge, Iowa 50501
     Telephone:  515-573-2191
     Facsimile:   515-573-2192
     crimminslaw@frontier.com
     *Attorneys for Plaintiff*